AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Texas

United States Courts
Southern District of Texas
FILED

FEB   3 2014

|  |  |  |
|---|---|---|
| United States of America | ) | David J. Bradley, Clerk of Court |
| v. | ) | |
| **Bridgette Denise TURNER** | ) | Case No. **14-121 M** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ January 31, 2014 _____ in the county of _____ Harris _____ in the
_____ Southern _____ District of _____ Texas _____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 USC 841(a)(1) and 21USC 841 (b)(1)(A)(i) | (1) did knowingly, intentionally and unlawfully possess with intent to distribute, One (1) kilograms or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance. |
| | (2) Knowingly and intentionally import into the United States from a place outside thereof a mixture or substance containing One (1) kilogram or more of heroin, a Schedule I controlled substance in violation of 21 USC 952(a) |

This criminal complaint is based on these facts:

See attached Affidavit in Support of Criminal Complaint.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

John A. Torres Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 02/03/2014 _____

_____
*Judge's signature*

City and state: _____ Houston, Texas _____        Frances H. Stacey U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, John A. Torres, after being duly sworn, do hereby depose and state:

1.      I am a Special Agent (SA) of the United States Department of Homeland Security, Homeland Security Investigations (HSI), assigned to HSI Houston and have been so employed since December 2002.  Prior to my employment by HSI, I was employed as Inspector for the United States Customs Service.  I am a graduate of the Federal Law Enforcement Training Center at Glynco, Georgia.  During the course of my career, I have conducted investigations involving the possession and importation of controlled substances and have received training in the investigation of violations of the Controlled Substances Act as found in Title 21, United States Code.

2.      The information enumerated in the paragraphs below, furnished in support of this criminal complaint for Bridgette Denise TURNER, is based upon information of my own personal knowledge, observations and or facts related to me by Customs and Border Protection Officers (CBPO's ) and other HSI Special Agents.  Because this affidavit is being submitted for the limited purpose of establishing probable cause for an arrest warrant, the affidavit may not contain every fact known to me during the course of this investigation.

3.      On January 31, 2014, at approximately 5:30 a.m. Bridgette TURNER and Morin DAWSON, both citizens of the United States arrived at George Bush Intercontinental Airport in Houston, Texas aboard United Airlines flight 1006 from Bogota, Colombia. Upon being processed through passport control primary both TURNER and DAWSON were selected for further inspection.

4.      On January 31, 2014, at approximately 6:30 a.m. in baggage control secondary CBPO Burtis Chenoweth obtained a binding baggage declaration from both TURNER and DAWSON who both claimed ownership of their checked baggage.  TURNER had a checked bag under United Airlines baggage tag # UA4016793806 and DAWSON had a checked bag under United Airlines baggage tag # UA4016793755.

5.      CBPO Chenoweth asked TURNER and DAWSON as to the purpose of their trip to Colombia, TURNER and DAWSON stated they traveled to Colombia to celebrate DAWSON's birthday and to inquire about some plastic surgery for TURNER.

6.      CBPO Chenoweth conducted an inspection of DAWSON's checked baggage with bag tag #UA4016793755 and noticed the bags zipper was broken and the contents of the bag contained both male and females clothing.  During the inspection of the baggage CBPO Chenoweth observed two pairs of women's platform cork wedge shoes wrapped within a black blanket.  TURNER stated to CBPO Chenoweth that she purchased a pair for her and her mother.  As CBPO Chenoweth examined the shoes he noticed that they felt excessively heavy.  CBPO Chenoweth noticed that both TURNER and DAWSON started to display signs of nervousness.

1

7.      At approximately 6:45 a.m., CBPO Raymond Bell probed one of the shoes which produced a light brown powdery substance.  CBPO Chenoweth conducted a field test of the powdery substance utilizing Mecke's Reagent test kit 924 which tested positive for the presence of heroin.  Further inspection of the shoes revealed that both pairs of the female's platform filled wedge shoes contained a light brown powdery substance.

8.      At approximately 7:00 a.m. HSI Special Agent John Torres was notified of the seizure and responded.  HSI Special Agent John Torres advised TURNER and DAWSON of their Miranda rights which they both signed a written waiver stating they understood their rights and were willing to speak with agents without an attorney present.

9.      HSI Special Agents John Torres and Krista Ortega interviewed both TURNER and DAWSON.  TURNER stated that the purpose of her trip to Bogota was to celebrate DAWSON's birthday and to see about having plastic surgery.  TURNER stated that they flew from Houston, Texas to Bogota, Colombia on January 25, 2014 via United Airlines.  TURNER stated that DAWSON paid for the travel with his credit card.  TURNER stated they drove to Dallas, Texas, on January 24, 2014, one day prior to their scheduled travel to pick up their U.S. passports.

10.     TURNER initially stated that she purchased both pairs of shoes as gifts at the Santa Barbara mall in Bogota, Colombia.  TURNER stated that one pair of shoes was for her and the other was for her grandmother.  TURNER later changed her story and stated they hired a cab driver by the name of Jose Rodriguez while in Bogota, Colombia who they ended up owing money for cab fare.  TURNER stated that they were unable to pay Rodriguez due to their credit card being locked.   TURNER stated that she was harassed by Rodriguez and stated if she didn't pay she would have to do something for him.

11.     TURNER stated that she received the shoes from Jose Rodriguez on the evening of her travel and was directed to place the shoes in a trash can outside of the International Arrivals Terminal at George Bush Intercontinental Airport Houston, Texas and that someone would pick them up.  TURNER provided a written statement that she knew that the shoes contained drugs.

12.     TURNER stated DAWSON did not know about the drugs contained within shoes and that DAWSON was back at the Hotel packing their bags so they could travel back to the U.S.

13.     DAWSON stated that they began planning their trip approximately three months ago to celebrate his birthday and to see about having tests done on TURNER for plastic surgery.  DAWSON stated that he and TURNER have been living together for approximately two years.

14.     DAWSON stated they had to save money to pay for their passports which were issued one day prior to travel and paid approximately $350.00 for each passport.

2

DAWSON informed interviewing agents that he paid for the travel with his credit card and that TURNER made the travel arrangement online.

15.    DAWSON acknowledged that they hired a cab driver by the name of Jose for the first three days of their visit while in Bogota.  DAWSON stated while they were in Bogota, he and TURNER were not always together.  DAWSON stated he would spend time at the casinos and TURNER would be out shopping.

16.    DAWSON stated he noticed TURNER with the shoes on the day they were scheduled to travel back to the United States.  DAWSON stated that TURNER claimed to have bought the shoes at a boutique.   DAWSON claimed that TURNER packed the shoes in her own bag.

17.    DAWSON was advised that the shoes were discovered in his bag by CBPO Chenoweth, which DAWSON denied and stated there was some type of mistake that the shoes were in her bag.  DAWSON stated his bag had a broken zipper.  An examination of DAWSON's boarding pass revealed a baggage tag affixed to the back matching bag tag #UA 4016793755.

18.    The gross weight of the shoes with the heroin weighed approximately 3.5 kilograms.  The shoes containing the heroin were submitted to the Customs and Border Protection Laboratory for extraction from the shoes and further analysis.

19.    Based on my experience and the aforementioned facts and observations, I respectfully submit that there is probable cause to believe that Bridgette Denise TURNER, did knowingly, intentionally and unlawfully possess with intent to distribute, 1 kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(i) and knowingly and intentionally import into the United States from a place outside thereof a mixture or substance containing One (1) kilogram or more of heroin, a Schedule I controlled substance in violation of 21 USC 952(a).

John A. Torres
Special Agent
U.S. Homeland Security Investigations

Sworn and subscribed before me this 3rd day of February, 2014 and I find probable cause.

Frances H. Stacy
U.S. Magistrate Judge

3